J. S25033/17

2018 PA Super 15

A.M.D., ON BEHALF OF A.D., A MINOR :  IN THE SUPERIOR COURT OF
               :     PENNSYLVANIA
      v.        :
               :
T.A.B.,            :    No. 3049 EDA 2016
               :
      Appellant   :

Appeal from the Order Entered August 24, 2016,
in the Court of Common Pleas of Pike County
Civil Division at No. 1040-2016 Civil

BEFORE: BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:      **FILED JANUARY 30, 2018**

T.A.B. appeals from the August 24, 2016 final order for protection of victims of intimidation ("PFI") entered in the Court of Common Pleas of Pike County pursuant to the Protection of Victims of Sexual Violence or Intimidation Act, 42 Pa.C.S.A. §§ 62A01-62A20 (the "Act"). We affirm.

The trial court set forth the following:

> On July 25, 2016, [A.M.D. ("Mother")] filed a Protection from Intimidation Petition on behalf of her daughter, [A.D. ("victim")], against [appellant]. The parties are neighbors whose property lines border one another. At which time the Honorable President Judge Joseph F. Kameen issued a temporary Protection from Intimidation order and scheduled a hearing for August 3, 2016, which was continued to August 24, 2016. This Court entered the [PFI] at issue following that hearing. Criminal proceedings were also initiated and completed in several instances involving these parties, including a conviction of [appellant] for harassment under

18 Pa.C.S.[A.] § 2709(a)(3) . . . . District Justice Menditto first convicted [appellant] under this section, [and] the Honorable Gregory H. Chelak upheld the conviction on appeal to the Court of Common Pleas of Pike County.

At the hearing, [Mother] and [victim] testified to numerous incidents with [appellant]. The initial incident occurred on July 5, 2015, in a Facebook post written following an undescribed incident with some neighborhood children, [appellant] referred to [victim] as "the Birchwood Lake whore." More Facebook posts followed from [appellant], which suggested [appellant] would "go to jail" if something happened to her children because of [victim's] family; and a post where [appellant] posted to [victim's] older sister, [K.A.], "Wake up, cut yourself. Your brother wants to kill himself. . . [.]"

A second incident occurred sometime in July, 2015 where [appellant] ran [victim] and some of her friends off the road with her vehicle. A group consisting of [victim], her brother[, G.D.], and four friends walked to the community pool. As [appellant] sped past the group, one of the minors asked [appellant] to "please slow down," to which [appellant] stopped and exited the vehicle, and an argument ensued which ended when [appellant] stated to [G.D.], "Why don't you go home and stab a dog?" prior to driving away. [Victim] testified she was in fear for her safety during that incident.

As a result of [victim's] fear of [appellant], she stopped going to the community pool which she frequented during the summer months. Since the filing of the instant action, [appellant] appeared at the community pool during the summer of 2016 much more frequently than before, [appellant] sat at a table while at the pool and [victim] felt intimidated, "whenever I was there she was always there. . . [.]" A lifeguard asked [appellant] to leave the community pool following an argument with the [victim's] entire family on July 17, 2015, where [appellant] went "completely crazy."

An incident occurred as to a property line dispute on August 30, 2015, where [appellant] called [G.D.] a "fucking faggot with his fucking faggot tattoos," and called [victim] "a fucking whore."

As well, an incident occurred around the end of May, 2016 while home alone in her bedroom, [victim] overheard through an open window [appellant] discussing [victim's] family with another neighbor, Tony. [Appellant] told Tony she would "take down" [victim's] parents. As a result, [victim] called [Mother], asked her to return home, and locked the doors and windows to the house.

The most recent incident occurred in early August of 2016. [Victim] and a friend had entered the Dollar General where [appellant] is employed, upon entering the store [appellant] spoke loudly "I can't wait on these people, I have a PFI against them."

Trial court opinion, 11/21/16 at 1-3 (citations to notes of testimony omitted).

The record reflects that following entry of the PFI, which expires on August 23, 2019, appellant filed a timely notice of appeal to this court. Appellant then complied with the trial court's order directing her to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Subsequently, the trial court filed its Rule 1925(a) opinion. In that opinion, the trial court set forth its reasons as to why it found "sufficient evidence of intimidation." (Trial court opinion, 11/21/16 at 4.) On July 17, 2017, this court entered a remand order directing the trial court to prepare a supplemental opinion to address "whether Mother, on

J. S25033/17

behalf of the victim, demonstrated by a preponderance of the evidence that the victim is at continued risk of harm from appellant." (Order of court, July 17, 2017.) The trial court complied.

Appellant raises two issues for our review:

1. Whether the Trial Court erred and abused its discretion by granting [the PFI] because [victim] failed to present evidence of intimidation as defined by 42 Pa.C.S.[A. § ]62A03[?]

2. Whether the Trial Court erred and abused its discretion by including language in the [PFI] which mandated that [a]ppellant stay at least fifty (50) feet away from [victim], when no such authority was granted to the Court[?]

Appellant's brief at 5.

Appellant first claims that the evidence of intimidation was insufficient to allow the trial court to enter the PFI against her because Mother, on behalf of the victim, "failed to present any evidence that [a]ppellant had intended to harass or intimidate the alleged victim as required by the Act." (Appellant's brief at 12.) This issue requires us to interpret the Act.

The Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501-1991, guides our interpretation of a statute.

The objective of all interpretation and construction of statutes is to ascertain and effectuate the legislative intent behind the statute. 1 Pa.C.S.[A.] § 1921(a). When the plain language of a statute is clear and free from all ambiguity, it is the best indication of legislative intent. 1 Pa.C.S.[A.] § 1921(b); *see also Chanceford Aviation v. Chanceford Twp. Bd. of*

> ***Supervisors***, 592 Pa. 100, 923 A.2d 1099, 1104 (Pa. 2007).
>
> When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent, including the purpose of the statute and the consequences of a particular interpretation. 1 Pa.C.S.[A.] § 1921(c). Furthermore, "it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." ***Hoffman Mining Co., Inc., v. Zoning Hearing Bd. of Adams Twp.***, ***Cambria Cnty.***, 612 Pa. 598, 32 A.3d 587, 592 (Pa. 2011) (internal quotes and citation omitted); see also 1 Pa.C.S.[A.] § 1932 (statutes are considered to be ***in pari materia*** when they relate to the same persons or things, and statutes or parts of statutes ***in pari materia*** shall be construed together, if possible). Lastly, we presume that the legislature did not intend an unreasonable or absurd result. 1 Pa.C.S.[A.] § 1922(1).

***Watts v. Manheim Twp. Sch. Dist.***, 121 A.3d 964, 979 (Pa. 2015).

Here, the trial court entered the PFI to protect the victim from appellant's intimidation. Our General Assembly set forth its findings and the purpose of the Act, in relevant part, as follows:

> (2) [I]ntimidation can inflict humiliation, degradation and terror on the victim.
>
> . . . .
>
> (5) Victims of [] intimidation desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution.
>
> (6) This chapter provides the victim with a civil remedy requiring the offender to stay away

> from the victim, as well as other appropriate relief.

42 Pa.C.S.A. § 62A02(2), (5) & (6).

The Act defines "intimidation," in pertinent part, as

> [c]onduct constituting a crime under either of the following provisions between persons who are not family or household members:
>
> > 18 Pa.C.S.[A.] § 2709(a)(4), (5), (6) or (7) (relating to harassment) where the conduct is committed by a person 18 years of age or older against a person under 18 years of age.

42 Pa.C.S.A. § 62A03. Under the Crimes Code,

> [a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> . . . .
>
> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;
>
> (5) communicates repeatedly in an anonymous manner;
>
> (6) communicates repeatedly at extremely inconvenient hours; or
>
> (7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa.C.S.A. § 2709(a)(4)-(7).

Here, appellant contends that because the Act defines intimidation as "[c]onduct constituting harassment under the Crimes Code," the Act requires a plaintiff to present sufficient evidence to demonstrate that the defendant committed criminal harassment. Appellant is mistaken.

The Act provides a civil remedy to victims of intimidation because our legislature recognized that those victims "desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution." 42 Pa.C.S.A. § 62A02(5)-(6). By its plain language, the Act merely requires a plaintiff:

> (1) to assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and
>
> (2) to prove by [a] preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S.A. § 62A06(a).

An assertion is a "declaration or allegation." Black's Law Dictionary 124 (8th ed. 2004). Therefore, contrary to appellant's claim, nothing in the statutory language required Mother, on behalf of the victim, to prove any element of criminal harassment. The Act only required Mother to assert or allege that the victim is a victim of appellant's intimidation. Mother did so.

With respect to findings of intimidation under the Act, the Pennsylvania Rules of Civil Procedure provide, in relevant part, that "[t]he

decision of the court may consist of only general findings of sexual violence and/or intimidation, but shall dispose of all claims for relief." Pa.R.Civ.P. 1957. A "general finding" is an "undifferentiated finding in favor of one party." Black's Law Dictionary 664 (8th ed. 2004). "Undifferentiated" means "not divided or able to be divided into different elements, types, etc." *Mirriam-Webster.com.* Merriam-Webster, n.d. Web. 13 Oct. 2017. Therefore, contrary to appellant's claim, and notwithstanding the fact that nothing in the Act required Mother to prove criminal harassment, nothing in the Act required the trial court to make a special finding[1] as to the elements of criminal harassment in order to support its finding of intimidation.

The Act next required Mother, on behalf of the victim, to prove by a preponderance of the evidence that the victim is "at a continued risk of harm." Section 62A06(a)(2). In its opinion, the trial court concluded that:

> [Mother] proved five (5) instances of harm to her daughter, [the victim], committed by [appellant]. Also, the proximity of [appellant's] home to [the victim's] home ensures the parties may continuously cross paths. Due to the past history of harm and proximity of the parties' residences, this court finds that [Mother] proved by a preponderance of the evidence that [the victim] is at a continued risk of harm from [appellant].

Trial court supplemental opinion, 8/29/17 at unnumbered pages 1-2.

---

[1] A "special finding" is "[a] finding of the necessary and ultimate facts to support a judgment in favor of one party." Black's Law Dictionary 664 (8th ed. 2004)

The trial court's conclusion involved a factual controversy that it resolved in favor of Mother, on behalf of the victim. Absent an abuse of discretion, error of law, or lack of support in the record, this court does not disturb a trial court's factual findings. ***See Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc.*** 814 A.2d 217, 224 (Pa.Super. 2002) (citation omitted). "Moreover, as to issues involving credibility, we defer to the [trial court sitting as] fact finder that had the opportunity to observe the demeanor of the witness." ***Id.*** (citation omitted).

We have carefully reviewed the record in this case, and it supports the trial court's conclusion that Mother proved by a preponderance of the evidence that the victim is at a continued risk of harm. Therefore, we find no abuse of discretion with respect to this finding of the trial court.

Appellant finally complains that the trial court "erred and abused its discretion by including language in the [PFI] which mandated that [a]ppellant stay at least fifty (50) feet away from [victim], when no such authority was granted to the [c]ourt." (Appellant's brief at 5.) Once again, appellant is mistaken.

The Act provides, in relevant part:

> **§ 62A07. Relief.**
>
> **(a)  Order or consent agreement.--**The court may issue an order or approve a consent agreement to protect the plaintiff or another individual, as appropriate, from the defendant.

**(b)** **General rule.--**An order or a consent agreement may include:

(1) Prohibiting the defendant from having any contact with the victim, including, but not limited to, restraining the defendant from entering the victim's residence, place of employment, business or school. This may include prohibiting indirect contact through third parties and also prohibiting direct or indirect contact with other designated persons.

(2) Granting any other appropriate relief sought by the plaintiff.

**(c)** **Duration and amendment of order or agreement.--**A protection order or an approved consent agreement shall be for a fixed period of time not to exceed 36 months. The court may amend its order or agreement at any time upon subsequent petition filed by either party.

42 Pa.C.S.A. § 62A07(a)-(c).

Although Section 62A07(b) sets forth the general rule that a trial court "may" enter an order that prohibits the offender from having contact with the victim, nothing in the language of that section limits a trial court to that particular relief. Indeed, the plain language of Section 62A07(a) permits a trial court to enter an order under the Act to protect the victim from the offender, "as appropriate." Moreover, the only statutory restraint placed on a trial court with respect to entry of that order concerns its duration. Section 62A07(c) clearly states that an order under the Act "shall be for a

fixed period of time not to exceed 36 months." Therefore, appellant's argument that the trial court exceeded its statutory authority when it entered the PFI that required appellant to stay at least 50 feet away from the victim for a period of 36 months lacks merit.

Within this issue, appellant further complains that the requirement that appellant stay at least 50 feet away from the victim violates her constitutional right to enjoy her property because

> [i]f the victim were located on her property and [a]ppellant was located on her own property, theoretically at times the individuals can be within fifty (50) feet of one another despite the fact that [a]ppellant is located on her own property. Thus, because of the distance restriction there are likely to be instances when [a]ppellant is unable to enjoy the use of her own property simply because the victim is approximately fifty (50) feet away on a different property. Such provision is clearly a violation of [a]ppellant's constitutional rights.

Appellant's brief at 14-15.

In this claim, appellant asserts an "as applied" constitutional challenge, as opposed to a "facial" constitutional challenge. In other words, appellant challenges the constitutionality of the PFI entered against her, not the constitutionality of the Act. *See Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa.Super. 2011) (explaining that an as-applied attack "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right"). Consequently, to be constitutional, the PFI must be

- 11 -

narrowly tailored to promote the Commonwealth's compelling interest in protecting the victim from appellant's intimidation. Appellant advances no legal argument in this regard. Rather, she baldly asserts that the distance restriction might inconvenience her ability to use her property at times. (Appellant's brief at 14-15.) Consequently, appellant waives this issue for failure to develop it before this court. *See In re Lokuta*, 11 A.3d 427, 436 (Pa. 2011) (reiterating that a failure to develop issues results in waiver).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/18