J-A16001-18
J-A16002-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.E.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.F., | |
| Appellant | No. 3835 EDA 2017 |

Appeal from the Order Entered October 30, 2017
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): 2017-61756-A-35

| | |
|---|---|
| C.E.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.F., | |
| Appellant | No. 3836 EDA 2017 |

Appeal from the Order Entered October 30, 2017
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): 2017-61757-A-37

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:  **FILED SEPTEMBER 19, 2018**

In these two cases, which we consolidate *sua sponte*, S.F. and C.F. (collectively, "Appellants") appeal from the October 30, 2017 protection from intimidation ("PFI") orders entered by the trial court pursuant to the Protection

of Victims of Sexual Violence or Intimidation Act, 42 Pa.C.S. §§ 62A01-62A20

("the Act"). After careful review, we affirm.

On September 25, 2017, Appellee, C.E.D. ("Mother"), filed petitions on

behalf of her children, G.D. and C.D. (collectively, "Children"), for PFI orders

against both S.F. and C.F., a married couple who lived next door to Mother

and Children. After entering temporary PFI orders against Appellants, the trial

court conducted a bifurcated evidentiary hearing on October 18th and 26th of

2017. The court summarized the facts established at those proceedings, as

follows:

> In the instant matter, Mother filed for a [PFI petition] against her neighbors, [Appellants]. At the October 18, 2017 hearing, both Mother and [C]hildren testified to the incident that led to Mother['s] calling the police and filing for protection. According to G.D., who is seven (7) years old, she and her eight (8) year old sister, C.D., had thrown "tree nuts" onto [Appellants'] driveway. G.D. testified that her Mother sent the children to the [home of Appellants] to apologize for putting the "tree nuts" on their adjacent property. (**See**, generally, N.T. October 18, 2017, pp. 9-10). … Mother instructed … [C]hildren to take a broom to clean the "tree nuts" from [Appellants'] driveway.
>
> According to G.D., when [Appellants] opened the door[,] there was a confrontation. G.D. stated that [S.F.] was "mad[]" and that he threw a bucket at G.D.[,] which hit her on the side of her abdomen, above her waist. G.D. also testified that [S.F.] then "threw their broom" at C.D., which hit her finger. G.D. testified that, thereafter she was afraid to go outside and play. (**See**, generally, N.T. October 18, 2017, pp. 11-14).
>
> C.D. also testified at the October 18, 2017 hearing. She stated, similarly to G.D., that … Mother sent her and G.D. to apologize for putting "tree nuts" on [Appellants'] driveway and to clean them up.
>
> C.D. testified that when the children went to [Appellants' home], [C.F.] was "mad" and [S.F.] "got really mad" and threw a bucket at G.D. and then threw a broom at C.D. (**See**, generally,

- 2 -

N.T. October 18, 2017, pp. 28-39). C.D. testified that she held her hands to her face and the broom hit her hand.

C.D. was subsequently taken to St. Luke's Hospital, where an x-ray showed a chipped bone in C.D.'s finger. C.D also testified that, she too, was afraid to go outside and play. On cross-examination, C.D. stated that Mother told [S.F.] that she was sorry about the "tree nuts." [S.F.] stated, "I don't want to hear it!" (N.T. October 18, 2017, pp. 40-41).

Mother testified at the October 18, 2017 hearing, that her relationship with [Appellants] has been antagonistic. Mother testified that there had been approximately ten (10) incidents with [Appellants] prior to this incident when C.D.'s finger was fractured. These incidents range from a dispute about where Mother's trash cans belonged to where Mother should be parking her car. (**See**, generally, N.T. October 18, 2017, pp. 65-69).

Mother testified that on the day C.D.'s finger was injured, she sent the children to [Appellants' house] to apologize "for throwing tree nuts." Mother testified that C.D. apologized to [C.F.] and that [S.F.] came out of the house "screaming" and carrying a rusty, metal dustpan. Mother testified that [S.F.] "snatched" the broom from C.D. and "jabbed" [M]other with the dustpan. Mother testified that when she said she would call the police, [S.F.] stated, "I dare you to call the police!" (**See**, generally, N.T. October 18, 2017, pp. 81-86).

According to Mother's testimony, the police and an ambulance were called. Subsequently, C.D. was taken to her primary care doctor as well as to Children's Hospital of Philadelphia (CHOP), where she was given a splint to wear for six (6) weeks. C.D. was wearing the splint at the hearings held before this [c]ourt. (**See**, generally, N.T. October 18, 2017, pp. 88-91).

Mother testified that she is "fearful" of [Appellants] and that … [C]hildren are afraid to go outside. C.D., the seven (7) year old, also testified credibly that she was afraid to go outside to play. (N.T. October 18, 2017, pp. 91-92).

Officer Mario Cabrera, of the Quakertown Police Department, testified that he responded to a call to Mother's address. Officer Cabrera testified that he saw C.D.'s swollen finger[,] as well as[] a bucket and broom. Initially, neither Mother nor … [C]hildren told Officer Cabrera that [S.F.] had thrown a broom, however during a second interview, G.D. stated that [S.F.]

had thrown the broom that hit C.D. (**See**, generally, N.T. October 18, 2017, pp. 141-[]44).

Officer Cabrera went to St. Luke's Hospital and spoke with C.D. where he observed her finger in a splint. On cross-examination, Officer Cabrera testified that he was aware of the fractured finger and that the hospital had observed a "facial contusion" upon C.D.

G.D., eight (8) years old, confirmed the events described by her younger sister. When the broom was thrown at C.D., C.D. held up her hands to her face to avoid the broom[,] which struck her hand.

There was also testimony that [Appellants] complained about "glitter" on the property from a piñata at one of the children's birthday parties. Additional complaints by [Appellants] were that the children used "chalk" near [Appellants'] driveway. (N.T. October 18, 2017, pp. 76-77). Even though the driveway is a "common area[,"] Mother told … [C]hildren they could not play there.

Trial Court Opinion (TCO), 2/2/18, at 3-5.

Based on these facts, the trial court entered final, two-year PFI orders against both S.F. and C.F. on the behalf of Children. Appellants filed timely notices of appeal, and each also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellants raise the following four claims for our review:

I. Whether the [t]rial [c]ourt erred and abused its discretion by granting the [PFI] [o]rders when there is insufficient evidence that … Appellants engaged in conduct constituting "Intimidation" as defined by the act[,] 42 Pa.C.S.[] §[]63A03[,] in that [S.F.] and [C.F.] did not engage in conduct constituting "[h]arassment" pursuant to 18 Pa.C.S. §[]2709(a)(4)(5)(6) or (7)[,] or "[s]talking" pursuant to 18 Pa.C.S. §[]2709.1[,] with respect to the two minors, [C.D.] and [G.D.]?

II. Whether the [t]rial [c]ourt erred or abused its discretion by improperly allowing testimony, without expert opinion, or other sufficient evidence, that [C.D.] had suffered a fractured finger?

- 4 -

III. Whether the [t]rial [c]ourt erred or abused its discretion in rendering a conclusion, without expert opinion or other sufficient evidence[,] that the alleged fractured finger was causally related to the actions of … Appellant, [S.F.]?

IV. Whether the [t]rial [c]ourt erred or abused its discretion in determining that [Mother's and Children's] version of the facts was credible?

Appellants' Brief at 7 (unnecessary emphasis omitted).

Appellants first claim that the evidence was insufficient to support the PFI orders entered against each of them for two reasons: first, they contend that there was insufficient evidence to demonstrate that they intimidated either G.D. or C.D. Second, they claim that Mother failed to prove, by a preponderance of the evidence, that they pose a "continued risk of harm" to Children. *Id.* at 25 (citation omitted). We will address each of these claims in turn, beginning with a summary of the pertinent purposes and provisions of the Act and other relevant statutes:

Our General Assembly set forth its findings and the purpose of the Act, in relevant part, as follows:

(2) [I]ntimidation can inflict humiliation, degradation and terror on the victim.

....

(5) Victims of [] intimidation desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution.

(6) This chapter provides the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief.

42 Pa.C.S.[] § 62A02(2), (5) & (6).

The Act defines "intimidation," in pertinent part, as

- 5 -

[c]onduct constituting a crime under either of the following provisions between persons who are not family or household members:

18 Pa.C.S.[] § 2709(a)(4), (5), (6) or (7) (relating to harassment) where the conduct is committed by a person 18 years of age or older against a person under 18 years of age.

42 Pa.C.S.[] § 62A03. Under the Crimes Code,

[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

....

(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

(5) communicates repeatedly in an anonymous manner;

(6) communicates repeatedly at extremely inconvenient hours; or

(7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa.C.S.[] § 2709(a)(4)–(7).

***A.M.D. on Behalf of A.D. v. T.A.B.***, 178 A.3d 889, 893 (Pa. Super. 2018).

We also point out that section 62A06 of the Act governs the hearing that the trial court must conduct before entering a final PFI order, stating:

**(a) General rule.--**Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court where the plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S. § 62A06(a).

In this case, Appellants initially argue that there was insufficient evidence presented at the hearing to demonstrate that they 'intimidated' G.D. or C.D., as that term is narrowly defined in the Act. According to Appellants, the term 'intimidate' includes only the sort of criminal harassment that is non-physical communication and, therefore, S.F.'s physical acts of throwing objects at Children is not 'intimidation' under section 63A03. Appellants further contend that they had no communication of any sort with Children; instead, they only communicated with Mother, who is over the age of 18 and, thus, is not a person who can obtain protection under the Act. Appellant's Brief at 24.

We reject Appellants' argument that the PFI orders entered against them cannot stand because the evidence failed to prove the elements of criminal harassment that is considered to be 'intimidation' under the Act, *i.e.*, harassment through communication rather than physical acts. In **A.M.D.**, we interpreted the Act as *not* requiring a petitioner "to prove *any* element of criminal harassment." **A.M.D.**, 178 A.3d at 894 (emphasis added). Instead, the plain language of section 62A06(a) mandates only that the petitioner must "(1) … *assert* that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant[,] and (2) … *prove* by [a] preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant." **Id.** (quoting 42 Pa.C.S. § 62A06(a)) (emphasis added). Noting that the

definition of "[a]n assertion is a 'declaration or allegation,'" the **A.M.D.** panel held that the language of section 62A06(a)(1) requires only that the petitioner "assert or allege that the victim is a victim of [the defendant's] intimidation." **Id.** (quoting Black's Law Dictionary 124 (8th ed. 2004)). The Act does not require a petitioner "to prove any element of criminal harassment." **Id.**

Here, Mother clearly asserted that Children are the victims of intimidation by Appellants. Appellants' argument that she was required to prove the elements of criminal harassment that is delineated as 'intimidation' under the Act is incorrect under **A.M.D.**

Moreover, **A.M.D.** also clarifies that:

> With respect to *findings* of intimidation under the Act, Pennsylvania Rules of Civil Procedure provide, in relevant part, that "[t]he decision of the court may consist of only general findings of sexual violence and/or intimidation, but shall dispose of all claims for relief." Pa.R.Civ.P. 1957. A "general finding" is an "undifferentiated finding in favor of one party." Black's Law Dictionary 664 (8th ed. 2004). "Undifferentiated" means "not divided or able to be divided into different elements, types, etc." **Mirriam-Webster.com.** Merriam–Webster, n.d. Web. 13 Oct. 2017. Therefore, contrary to [the] appellant's claim, and notwithstanding the fact that nothing in the Act required [the petitioner] to prove criminal harassment, nothing in the Act required the trial court to make a special finding[1] as to the elements of criminal harassment in order to support its finding of intimidation.
>
> [1] A "special finding" is "[a] finding of the necessary and ultimate facts to support a judgment in favor of one party." Black's Law Dictionary 664 (8th ed. 2004)[.]

**A.M.D.**, 178 A.3d at 894 (emphasis added). In the present case, the trial court made an undifferentiated finding, in favor of Mother, that intimidation

of the victims had occurred. *See* TCO at 6 (finding "the testimony of Mother and the two (2) children to be especially credible and supported by other evidence in this case"); *id.* at 7 ("Petitioner Mother has met her burden of proof under the applicable statute for intimidation."). Pursuant to *A.M.D.*, the court's general finding of intimidation is sufficient to satisfy section 62A06(a)(1).

Next, we address Appellants' claim that the evidence failed to prove that they pose a 'continued risk of harm' to Children. In support of this argument, Appellants rely solely on their own testimony that "they love children[,]" and that "[t]hey certainly had no intentions of causing the children grief." Appellants' Brief at 25. Appellants claim that, "[i]f anything, they were very concerned about the children and alarmed by the bizarre reactions and escalating verbal incidents that they had been seeing from [Mother]." *Id.*

Appellants' argument is unconvincing. They ignore that the trial court found their testimony "to be less than credible, and wholly contradicted by the facts in evidence." TCO at 6. The court continued:

> Most importantly, this [c]ourt recognized that the situation between these neighbors was escalating from complaints about trash cans to a child being physically harmed. Specifically, the [c]ourt said this about the situation:
>
> > "It condenses, and it expands, and it expands again to the point where the police are called, an ambulance is called, a child goes to the hospital and suffers an injury, and it's all because people who are adults acted like children because children acted like children."
>
> N.T. [10/26/17, at] 129[.]

To further reiterate this point, we also stated:

"That's not what happened here…. These are things that can happen when people don't stop and take a deep breath. It's unfortunate. I am not suggesting you wanted this to occur, but it happened. It shouldn't have, but it did."

[*Id.* at] 130.

In conclusion, Petitioner Mother has met her burden of proof under the applicable statute for intimidation. There was also ample credible evidence presented through testimony to support the finding that there would be a continued risk of harm to the Mother and … [C]hildren if the [PFI] [o]rder was not entered.

TCO at 6-7.

As in ***A.M.D.***, the trial court's decision in this case clearly "involved a factual controversy that it resolved in favor of Mother, on behalf of the victim[s]." ***A.M.D.***, 178 A.3d at 895.

Absent an abuse of discretion, error of law, or lack of support in the record, this court does not disturb a trial court's factual findings. ***See Beaver Valley Alloy Foundry Co. v. Therma– Fab, Inc.,*** 814 A.2d 217, 224 (Pa. Super. 2002) (citation omitted). "Moreover, as to issues involving credibility, we defer to the [trial court sitting as] fact finder that had the opportunity to observe the demeanor of the witness." ***Id.*** (citation omitted).

***A.M.D.***, 178 a.3d at 895.

The record in the present case supports the trial court's determination that Mother established, by a preponderance of the evidence, that Children are at a continued risk of harm due to the escalating nature of her and Children's interactions with Appellants, as well as the close proximity in which the parties reside. ***See id.*** (finding mother had proven the appellant, a neighbor, posed a continued risk of harm to her child, where the parties lived in close proximity and there was a "past history of harm"). Accordingly, we

discern no abuse of discretion in the court's decision regarding the 'continued risk of harm' requirement of the Act.

In Appellants' next issue, they "contend that the trial court improperly allowed medical testimony that [C.D.] sustained a fractured finger and that the fracture was causally related to being struck by the broom." Appellants' Brief at 26.[1] Specifically, Appellants take issue with the fact that C.D. was allowed to testify that her finger was fractured, without any expert testimony, or "medical record such as an x-ray, MRI, or even a discharge report[,]" to prove that injury. *Id.* at 27, 28. They also claim that expert testimony was required to prove that S.F.'s act of throwing the broom caused C.D.'s fracture, especially considering that "[a]dditional testimony at the hearing[] provided other potential causes of the fracture[,]" such as C.D.'s involvement in gymnastics. *Id.* at 28. While Appellants concede that "an injury was not a requisite element for the PFI [o]rder," they claim that they were prejudiced by the erroneous admission of this 'medical evidence' because "the question of causation was still a significant determination on the issue of credibility." *Id.*

Appellants' argument is unconvincing. Initially, we recognize that "[t]he admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its

---

[1] While Appellants separate this issue into two claims in their Statement of Questions Involved, they combine it into one issue in their Argument section.

discretion or committed an error of law." **McManamon v. Washko**, 906 A.2d 1259, 1268 (Pa. Super. 2003) (citation omitted). "Thus our standard of review is very narrow…. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Id.** at 1268-69 (citations omitted).

Here, even if we accepted Appellants' claim that the court improperly admitted medical evidence, nothing in the record supports their assertion that the court found Mother and/or Children credible because of that evidence. The trial court states in its opinion that it found Mother and Children to be credible because their testimony, generally, was "supported by other evidence in this case[,]" whereas Appellants' testimony was "wholly contradicted by the facts in evidence." TCO at 6. The record supports the court's determination; for instance, Officer Cabrera's testimony that C.D.'s finger was swollen corroborated Mother's and Children's claim that C.D.'s finger was injured when S.F. threw a broom at her. The trial court also explained that it determined Children to be "[m]ost credible" because they "testified without being shaken or contradicted and were inherently believable." **Id.** (internal quotation marks omitted). Again, the record supports the court's decision, as G.D. and C.D., despite their young ages, testified consistently and similarly regarding the at-issue incident.

In sum, the court believed Mother's and Children's claim that S.F. threw a broom at C.D. It also credited their testimony - which was corroborated by Officer Cabrera - that C.D.'s finger sustained an injury. The evidence that

C.D.'s injury was a fracture did not seemingly have any bearing on the trial court's decision to find Mother and Children credible. Thus, even if the admission of that evidence was improper, Appellants have failed to demonstrate that they were prejudiced.

Finally, Appellants aver that the weight of the evidence did not support the trial court's credibility determinations in favor of Mother and Children. In support, they claim that Officer Cabrera's testimony cast doubt on the credibility of Mother and Children, because the officer testified that Mother had alcohol on her breath and admitted that she had been drinking on the night of the incident. Appellants also stress that, according to the officer, neither Mother nor Children mentioned S.F.'s throwing a broom at C.D. when the officer first interviewed them.

Appellants further contend that Mother's testimony was "bizarre" with respect to other issues, such as Mother's claims that she had to hire "two security guards to monitor an outside birthday party[,]" she "put up flags, in an attempt to separate her portion of the lawn, from [Appellants'] lawn[,]" and she purchased "'pro police' signs and put them out in her front yard." Appellants' Brief at 31-32. With regard to the testimony of Children, Appellants argue that the court should not have credited them because their testimony differed regarding "whether [C.D.] had her palms away from her face or toward her face, when the broom was thrown," and "whether [C.D.] was actually struck in the face with the broom." *Id.* at 32. Appellants also point out that C.D. "hesitat[ed] in answering questions about gymnastics and

whether she had suffered a previous injury to her finger." *Id.* For all of these reasons, Appellants maintain that the court should not have believed Mother's and Children's testimony, but should have credited their version of the incident instead.

In response, Mother argues that Appellants are improperly "invit[ing] this Court to disregard [our] standard [of review] and use a cold record to reverse the [trial] court's credibility determinations." Mother's Brief at 20. We agree. "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." ***Thompson v. Thompson***, 963 A.2d 474, 477 (Pa. Super. 2008). As discussed *supra*, in its opinion, the trial court stressed that after "two (2) days of hearings[,]" it found "[m]ost credible … the testimony from the children, who testified 'without being shaken or contradicted' and were 'inherently believable.'" TCO at 6. The court also noted that both girls testified to the same facts regarding the day that C.D.'s finger was injured. The minor inconsistencies or hesitations in Children's testimony cited by Appellants do not convince us that the trial court abused its discretion in finding their testimony to be most credible. Moreover, Children's testimony aligned with Mother's account of the incident in question, thus supporting the court's conclusion that Mother was also believable. The court's decision cannot be deemed an abuse of discretion simply because Mother admitted she was drinking at the time of the incident, or because Mother may have acted strangely after the encounter with Appellants.

In sum, the parties in this case clearly offered differing accounts of what transpired on the day in question, and blame one another for their antagonistic relationship. The trial court did its best to ferret out the truth, and it ultimately made credibility determinations in favor of Mother and Children. Because the record supports the court's decisions in that regard, we will not disturb them.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/18