J-A20030-23

2023 PA Super 174

| | | |
|---|---|---|
| IN RE: R.H.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.A.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 530 MDA 2023 |

Appeal from the Order Entered March 14, 2023
In the Court of Common Pleas of Centre County
Orphans' Court at 2021-4535A

BEFORE:     PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.:                    **FILED: SEPTEMBER 21, 2023**

D.A.M. (Mother) appeals from the order granting the motion for summary judgment filed by T.A.V. (Father), and dismissing Mother's petition to involuntarily terminate Father's parental rights to R.H.M. (Child).  We affirm.

FACTS AND PROCEDURE

Child was born in August 2020.  The trial court summarized:

> In November or December 2019, the [parties] conceived [C]hild.  In October 2020, [] Father filed a Complaint for Paternity Testing.  (N.T., April 6, 2021, p. 65).  On November 4, 2020, [] Mother filed a Petition for [a] Sexual Violence Protection Order [], alleging [] Father raped her.  (***Id.***).  … On April 5, 2021, [] Mother filed a Petition to Involuntarily Terminate [] Father's Parental Rights ("TPR").

Trial Court Opinion, 3/14/23, at 1.

_____

[*] Former Justice specially assigned to the Superior Court.

Mother had petitioned for a protective order pursuant to the Protection of Victims of Sexual Violence or Intimidation Act (PVSVIA), 42 Pa.C.S.A. §§ 62A01-62A20.[1] The PVSVIA "applies to victims of sexual violence whose attackers are not members of their family or household." **K.N.B. v. M.D.**, 227 A.3d 918, 923 (Pa. Super. 2020) (citing 42 Pa.C.S.A. § 62A03), **aff'd**, 259 A.3d 341 (Pa. 2021). This Court has described the PVSVIA as a "counterpart" to the Protection from Abuse Act (PFA). **E.A.M. v. A.M.D. III**, 173 A.3d 313, 316 (Pa. Super. 2017) (citing 23 Pa.C.S.A. §§ 6101–6122 and noting the PFA provides protection to victims of abuse by family members). To prevail under the PVSVIA, Mother had to assert she "was a victim of sexual violence" committed by Father, and prove she was "at a continued risk of harm" from Father. 42 Pa.C.S.A. § 62A06(a).

Mother sought to prohibit Father from having contact with Mother and Child. Petition for Sexual Violence Protection Order, 11/4/20, at 2-3. Mother alleged she felt "unsafe because of the sexual assault that happened last December [2019]." **Id.** at 2. Mother stated she "did not want [Father] involved **because of how [C]hild was conceived** …." **Id.** (emphasis added). In describing the requisite "prior incidents of sexual violence that

---

[1] The PVSVIA provides a victim "with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief." 42 Pa.C.S.A. § 62A02(6). "The General Assembly enacted the PVSVIA in 2014 to give victims of sexual violence safety and protection from further interactions with their offender, regardless of whether they seek criminal prosecution." **K.N.B. v. M.D.**, 259 A.3d 341, 344 (Pa. 2021) (citing 42 Pa.C.S.A. § 62A02(5)).

Defendant has committed," Mother stated, "**It happened one time**, when I was drinking, and he offered to take me home and it happened." *Id.* (emphasis added).

The trial court held two days of hearing on Mother's PVSVIA petition. *See* Trial Court Opinion, 3/14/23, at 1. The parties did not dispute that they had been co-workers and had sex one time. Consistent with her petition, Mother testified that Father had raped her. *See* N.T., 4/6/21, at 4-104. She also presented testimony from her fiancé, K.P., and her friend, M.B. *Id.* at 105-58. To the contrary, Father testified the sex was consensual. *See*, *e.g.*, N.T., 1/27/22, at 23. Father stated he and Mother "started off as friends," "got closer and closer, [and] started hanging out outside of work." *Id.* at 9-12. According to Father, Mother initiated the sexual encounter and told Father "she couldn't get pregnant." *Id.* at 16-21. Father presented testimony from the parties' work supervisor, three co-workers, and Father's wife. *Id.* at 84-97; 97-104; 105-23; 124-33; 134-42. Father also introduced six exhibits, including three images of Snapchat messages between Mother and Father after they had sex. *Id.* at 83 (Exhibits D1-D3); 143 (Exhibits D4-6).

The trial court resolved the factual controversy of the alleged rape in favor of Father. The court noted "two competing versions" of "events that occurred the night [Mother] and [Father] engaged in sexual intercourse." *Id.* at 158-59. The trial court found Father's "version of events [was] supported by the text messages and the exhibits as well as other evidence that was

offered." *Id.* at 159. Because the trial court did not find Mother's assertion of sexual violence, *i.e.*, rape, to be credible, it advised Mother, "the court will deny the sexual violence protection final order …. You have 30 days to appeal." *Id.* Mother did not appeal.[2]

Mother proceeded to litigate the underlying TPR petition she had filed the day before the April 6, 2021 hearing in the PVSVIA case. Mother sought to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2514 ("Special provisions when child conceived as a result of rape or incest"). Mother averred Child "was conceived as a result of [Father's] rape of Mother." TPR Petition, 4/5/21, at 7, ¶ 54. *See also* 23 Pa.C.S.A. § 2511(a)(7) ("The rights of a parent in regard to a child may be terminated after a petition filed on … the grounds [that t]he parent is the father of a child conceived as a result of a rape or incest.").[3]

---

[2] Mother states she "did not pursue an appeal based on her admittedly weak chance of proving a 'continued risk of harm' due to the passage of time." Mother's Brief at 16; *see also id.* at 18.

[3] Rape occurs when a "person engages in sexual intercourse with a complainant:

    (1)   By forcible compulsion.
    (2)   By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
    (3)   Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring."

18 Pa.C.S.A. § 3121(a)(1), (2), and (3).

Mother averred she and Father were co-workers in December 2019, when Father "raped Mother by engaging in sexual intercourse with her when she was unconscious." TPR Petition, 4/5/22, at 4, ¶¶ 14, 16. In the alternative, Mother averred that Father raped her "by engaging in sexual intercourse with her by forcible compulsion or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." *Id.* ¶ 15.

Father filed a motion for summary judgment, with accompanying brief, seeking dismissal of the TPR petition. Father claimed there were "no genuine issues of material fact which prevent the entry of summary judgment in favor of [] Father." Motion for Summary Judgment, 12/19/22, at 1, ¶ 8. Father averred the parties "had participated fully in a two (2) day hearing in a related case" concerning Mother's PVSVIA petition. *Id.* at 1, ¶ 3. According to Father, the trial court's determination in the PVSVIA proceedings precluded Mother from seeking termination of his parental rights based on Child being conceived as a result of rape. Father asserted "collateral estoppel support[s] the dismissal of the claim of rape which is the basis of [] Mother's petition [to terminate Father's parental rights]." Father's Brief in Support of Summary Judgment, 12/19/22, at 1.

Mother filed an answer and new matter, along with a brief in opposition to summary judgment. In her new matter, Mother averred:

> Stephanie Cooper, Esquire, an attorney who [] Mother previously talked to[,] will be subpoenaed to testify.

- 5 -

[] Mother's therapist through Centre Safe will be asked to testify.

[] Mother recently discovered bank records from the night in question and will be providing them at trial.

[] Mother will be providing a timecard at trial.

[] Mother will be providing an expert report from Dr. Veronique Valliere regarding her reaction to the sexual assault against her.

Answer to Motion for Summary Judgment and New Matter, 1/9/23, at 2, ¶¶ 11-14.

On January 11, 2023, the trial court heard oral argument. By order and opinion dated March 10, 2023, and docketed March 14, 2023, the trial court granted summary judgment, concluding that "[c]ollateral [e]stoppel is enough on its own to preclude the TPR." Trial Court Opinion, 3/14/23, at 3.[4] The trial court observed that Mother's PVSVIA and TPR petitions "arise from a claim of [] Father raping [Mother] in November or December 2019." *Id.* Explaining that "rape is an essential issue" in both cases, the trial court noted its determination in the PVSVIA case that "Mother failed to show she was raped by [] Father." *Id.* Thus, the trial court concluded Mother was collaterally estopped from claiming Child was conceived as a result of rape. The trial court granted Father's motion for summary judgment and dismissed Mother's petition to terminate Father's parental rights.

---

[4] The Honorable Jonathan D. Grine presided in both cases.

Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. The trial court subsequently advised it had "addressed the reasons for its decision regarding the issues on appeal" in its prior opinion, and "relies on said Opinion in respectfully requesting its Order be affirmed." 1925(a) Opinion, 4/13/23.

## ISSUES

Mother presents the following issues for review:

1. Did the Trial Court err by finding all [] elements of Collateral Estoppel applied to preclude litigation on [Mother's] Petition for Involuntary Termination of Parental Rights[?]

2. Did the Trial Court abuse its discretion by granting the Motion for Summary judgment when a genuine issue of material fact existed[?]

Mother's Brief at 4.

## DISCUSSION

A. Collateral Estoppel

Mother argues the trial court erred in concluding collateral estoppel precluded litigation of her petition to terminate Father's parental rights. Mother's Brief at 12. Application of the doctrine of collateral estoppel is a question of law. *Commonwealth v. Brockington-Winchester*, 205 A.3d 1279, 1283 (Pa. Super. 2019). "Accordingly, our standard of review is *de novo*, and our scope of review is plenary." *Id.* (citation omitted).

"The phrase 'collateral estoppel,' also known as 'issue preclusion,' simply means that when an issue of law, evidentiary fact, or ultimate fact has been

determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit." *Id.* (citation omitted); *see also Chada v. Chada*, 756 A.2d 39, 42 (Pa. Super. 2000) (doctrine of collateral estoppel precludes litigation of claims and issues that have previously been litigated).

> An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.

*Brockington-Winchester*, 205 A.3d at 1284 (citation omitted).

> Collateral estoppel applies when:
>
> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Chada*, 756 A.2d at 42.

Here, the trial court found "all five prongs" established collateral estoppel. Trial Court Opinion, 3/14/23, at 4. Mother challenges the court's findings as to the first, fourth, and fifth prongs. Mother's Brief at 15-20; *id.* at 16-17 (Mother conceding second and third prongs).

### (1) The issue decided in the prior case is identical to one presented in the later case;

Mother claims the issue in her PVSVIA case was not identical to the issue in her TPR case because, in the PVSVIA case, Mother was required to "prove 'sexual violence' occurred **_and_** prove by a preponderance of the evidence that the plaintiff is at a continued risk of harm." Mother's Brief at 15 (emphasis in original). Mother emphasizes that "'sexual violence' is defined as numerous sexual and children-based offenses—not just rape." *Id.* at 15. Mother also states she "testified to more than one sexual assault on the night in question," and "at least one of the sexual assaults, that she could remember, may not have even been able to conceive a child due to lack of penetration." *Id.* at 16 (footnote omitted). Mother's argument is not persuasive.

Mother appears to confuse collateral estoppel with *res judicata*. Collateral estoppel "is a broader concept than *res judicata* and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being re[-]litigated in a subsequent suit." *E.K. v. J.R.A.*, 237 A.3d 509, 521 (Pa. Super. 2020).

The Pennsylvania Supreme Court has explained:

*Res judicata,* or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. …

Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated.

*Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995) (citations omitted). "Under the doctrine of collateral estoppel, … the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). "While *res judicata* operates to preclude subsequent actions, collateral estoppel operates to preclude re-litigation of issues previously decided only." *Garman v. Angino*, 230 A.3d 1246, 1255 (Pa. Super. 2020).

Mother disregards that with collateral estoppel, "when an issue of law, **evidentiary fact**, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit." *Brockington-Winchester*, 205 A.3d at 1283 (emphasis added). To prevail in her TPR petition under 23 Pa.C.S.A. § 2511(a)(7), Mother must prove Child was conceived as a result of rape.[5] In the PVSVIA

---

[5] In TPR proceedings, the petitioner must establish grounds for termination by clear and convincing evidence. *In re Z.P.*, 994 A.2d 1108, 1115-16 (Pa. Super. 2010). Clear and convincing evidence is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Int. of A.M.*, 256 A.3d 1263, 1270 (Pa. Super. 2021).

*(Footnote Continued Next Page)*

case, Mother had to assert she "was a victim of sexual violence ... committed by [Father] and the court [had to] find the assertion credible." **K.N.B.**, 227 A.3d at 926. Mother identified the sexual violence as rape that resulted in Child's conception.[6]

In denying Mother's request for a protective order, the trial court credited Father's "version of events" and concluded Father did not rape Mother. N.T., 1/27/22, at 159. Thus, the issue decided in the PVSVIA case is identical to the issue presented in the TPR case. **Chada**, 756 A.2d at 42.[7]

_____

The PVSVIA requires a petitioner to establish "a continued risk of harm" by a preponderance of the evidence. **See A.M.D. on Behalf of A.D. v. T.A.B.**, 178 A.3d 889, 894–95 (Pa. Super. 2018) (citing 42 Pa.C.S.A. § 62A06(a)(2)). **See also E.A.M. v. A.M.D. III**, 173 A.3d 313, 318 (Pa. Super. 2017) (holding petitioner under the PVSVIA is not required to prove the commission of sexual violence beyond a reasonable doubt). The preponderance of the evidence is "a more likely than not inquiry," that the petitioner is at a continued risk of harm from the defendant. **K.N.B.**, 227 A.3d at 926.

[6] During closing argument, Mother's counsel referenced the definitions of rape under the Crimes Code, stating: "We filed this asking for a result under [18 Pa.C.S.A. §] 3121(a)(3), unconscious, but also 3121(a)(2) by threat of forcible compulsion." N.T., 1/27/22, at 154. Counsel added, "For this case, … all we need to prove in order for rape to be proven, [is] that [Mother] was unconscious." **Id.** at 155.

[7] At the close of the PVSVIA hearing on April 6, 2021, Mother's counsel appeared to acknowledge that the issues are identical:

> [COUNSEL]: Your Honor, I also filed a petition to terminate [Father's] parental rights yesterday.
>
> THE COURT: I heard you say that.

*(Footnote Continued Next Page)*

**(2)  There was a final judgment on the merits;**

Mother concedes "it is true that a final judgment was entered …."
Mother's Brief at 16.

**(3)  The party against whom the plea is asserted was a party or in privity with a party in the prior case;**

Mother "[a]dmit[s] these are the same." *Id.* at 17.

**(4)  The party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding;**

Mother argues she was denied a full and fair opportunity to litigate the PVSVIA case. Mother's Brief at 17-18. Mother's sole basis for this claim is that the trial court improperly granted Father's objection to Mother's hearsay testimony about advice from her prior counsel. Mother's Brief at 17 (citing N.T., 4/6/21, at 35-36). According to Mother, the trial court "based [its] decision in the [PVSVIA] case on Mother's actions after the rape," and "this testimony would have gone a long way towards giving Mother credibility as to why she was acting the way she did towards her rapist and coworkers." *Id.*

---

| [COUNSEL]: | So[,] I think we need to wait until a determination's made by the [c]ourt as to what actually occurred that night. |
|---|---|
| THE COURT: | What's the -- I haven't seen these petitions so it's hard for me to – what's the basis for the termination? |
| [COUNSEL]: | That the child was conceived by rape. |

N.T., 4/6/21, at 160.

at 17-18. Mother contends her testimony was not being offered for the truth of the matter asserted, but "for the fact that she received the advice and was [*sic*] her state of mind for all her actions going forward." ***Id.*** at 18 (footnote omitted). The record does not support this argument.

Toward the beginning of the PVSVIA hearing, the trial court granted Father's objection to Mother's hearsay testimony about advice she received from prior counsel. N.T., 4/6/21, at 35-36. However, Father did not object later, as the hearing continued, and Mother repeatedly testified about prior counsel's advice. ***See id.*** at 66-69, 79, 81-83, 90-91, 103. The record thus refutes Mother's claim that she did not have a full and fair opportunity to litigate because the trial court precluded her from testifying about prior counsel's advice.

It bears repeating that the trial court heard two full days of evidence. On the first day, Mother presented her case-in-chief and testified at length. ***See*** N.T., 4/6/21, at 4-104. Mother also presented testimony from her fiancé, K.P., and her friend, M.B. ***Id.*** at 105-58. On the second day, Mother testified briefly on direct and in rebuttal. N.T., 1/27/22, at 4-5; 143-47. Father then testified at length. ***Id.*** at 6-83. Father presented additional testimony from J.S. (the parties' supervisor); J.E., A.P. and D.J. (the parties' co-workers); and S.G. (Father's wife). ***See id.*** at 84-97; 97-104; 105-23; 124-33; 134-42. Father also introduced six exhibits into evidence. ***Id.*** at 83 (Exhibits D1-D3); 143 (Exhibits D4-6). Following closing arguments, the trial court observed

that the parties had presented "two competing versions [of] events that occurred the night [Mother] and [Father] engaged in sexual intercourse." *Id.* at 158-59. The trial court advised it was denying Mother's PVSVIA petition "after hearing and full consideration of the evidence presented both on April 6th as well as today." *Id.* Accordingly, Mother had a full and fair opportunity to litigate the issue in the prior proceeding.

**(5) The determination in the prior proceeding was essential to the judgment.**

Mother argues the trial court's determination in the PVSVIA case that Father did not rape Mother, "was not 'essential' to the judgment" because "'[e]ssential' is defined as 'absolutely necessary; extremely important.'" Mother's Brief at 18. Mother makes the conclusory, unsupported statement that a "case where there are two elements that need to be proven cannot, by definition, be essential to the claim without the other." *Id.* at 18-19. We disagree.

The trial court in the PVSVIA case resolved a factual controversy in favor of Father. *See K.N.B. v. M.D.*, 227 A.3d at 927 (stating this Court "will not disturb the trial court's finding that [the petitioner] was a victim of sexual violence."). The trial court denied Mother's petition for a protective order because it determined Mother "failed to show she was raped," and there was no "existence of sexual violence." *See* Trial Court Opinion, 3/14/23, at 3. Consequently, the trial court's determination in the prior proceeding was essential to its judgment denying a protective order.

- 14 -

B.      Summary Judgment

Mother argues the trial court abused its discretion in granting summary judgment, because "there was new evidence that was discovered as well as new evidence that would be presented to the trial court."  Mother's Brief at 21.  Mother does not identify any issue of material fact, but claims she has "the right to have the case heard by the judge."  **Id.**

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law.  ***True R.R. Realty, Inc. v. McNees Wallace & Nurick, LLC.***, 275 A.3d 490, 494 (Pa. Super. 2022) (citation omitted).

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> **Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action**.  …

**Id.** (emphasis added).

Mother's claim that her "new evidence" precludes summary judgment is unavailing.  As detailed above, Mother, with the benefit of counsel, fully and fairly litigated the rape issue in the PVSVIA case.  Although in hindsight she

- 15 -

may not have litigated the issue as fully as she would have liked, "the appropriate time and place to do so was before the Court of Common Pleas … during the [PVSVIA] action." ***Chada***, 756 A.2d at 45 (stating "parties are entitled to rely on the finality of the litigation they both expressed their desire to achieve.").

The doctrine of collateral estoppel bars Mother from relitigating the issue of whether Father raped her, which is the basis for Mother's petition seeking to terminate Father's parental rights. We agree with the trial court that there is no genuine issue of material fact. Accordingly, we affirm the order granting Father's motion for summary judgment and dismissing Mother's petition to involuntarily terminate Father's parental rights.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/21/2023