J-A08014-19

2020 PA Super 16

| | | |
|---|---|---|
| K.N.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.D. | : | |
| | : | |
| Appellant | : | No. 1003 WDA 2018 |

Appeal from the Order Entered June 15, 2018
In the Court of Common Pleas of Clarion County Civil Division at No(s):
No. 155 CD 2018

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    FILED JANUARY 30, 2020

M.D. appeals from the protection order granted against him pursuant to the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA" or "the Act"), 42 Pa.C.S.A. §§ 62A01-62A20. M.D. claims the petition filed by K.N.B. was barred by the statute of limitations and challenges the sufficiency and weight of the evidence. We affirm.

In September 2015, M.D., an 18-year-old Clarion University student, and K.N.B., also an 18-year-old Clarion student, met on the dating app Tinder.[1] On September 7, 2015, the first-year students started to kiss while watching television in M.D.'s dorm room. K.N.B. testified that she told M.D. that she did not want to "do anything more" than kiss, N.T., 6/15/18, at 18, and that she told him three times that she did not want to "do anything

_____

[1] Tinder is a widely used dating application that is accessible to users on smartphones and other devices. See Google Play, https://play.google.com/store/apps/details?id=com.tinder.

further." Id. at 14. M.D. proceeded to remove K.N.B.'s pants and have intercourse with her. Id. K.N.B. testified that she "felt paralyzed" and "could[ not] move." Id. at 15. She was "confused and scared" and "started to tear up." Id. She testified that M.D.'s roommate came in and she "was just terrified." Id. She stated she was not "thinking of anything but what was happening at that point." Id. at 15-16. The two then engaged in oral sex. Id. at 16. K.N.B. stated that at the end she "completely lost it," retrieved her belongings, and left sobbing. Id.

K.N.B. testified that the two agreed to see each other the next day, and she "felt like [she] did something wrong by not wanting to have sex with him again" and "felt like I owed him to have sex with him again." Id. at 17. She went to his room, and was in a "terrified state." Id. She stated that they started to have sex, but then she "just lost it, and . . . was like, I'm done." Id. 18. She got dressed and left. Id.

K.N.B. did not intentionally have contact with M.D. again. In May 2016, M.D. sent K.N.B. a Facebook message stating, "Okay, so I just want to say I'm sorry for being a douche. I know it was a dick thing, and I am sorry." Id. at 22.

K.N.B. testified that she and M.D. would sometimes attend the same campus parties, including a party in November 2016 where M.D. approached K.N.B., "cracked a joke" and tried to fist bump her. Id. at 25. She would also see him on campus. Id. at 23. K.N.B. testified that when she would see M.D. she would have panic attacks, which she described as "episode[s] of traumatic

- 2 -

stress," where it is "like the whole world stops, and [she] can't think." Id. at 24. She was diagnosed with post-traumatic stress disorder. Id. at 25. K.N.B. testified that she left the sorority she had joined because the sorority activities caused her to see M.D. too often. Id. at 26-27. In February 2018, K.N.B. saw M.D. at a Walmart, and had a severe panic attack. Id. at 28. After filing the petition for a sexual violence protection order ("SVPO"), K.N.B. saw M.D. walking his dog by her house. Id. at 29.

M.D. testified that the encounter in September 2015 was consensual. Id. at 73-74. He further testified that when K.N.B. returned the next day, the two engaged in intercourse and he ejaculated early but, rather than telling this to K.N.B., he told her that he "was just not feeling it." Id. at 75. He testified that his May 2016 Facebook message was to apologize for saying he was not feeling it. Id. at 75-76.

In February 2018, after seeing M.D. at Walmart, K.N.B. contacted the Clarion University Police Department and filed a report about the September 2015 assault. Id. at 28. At this time, M.D. was no longer a student at Clarion University. Following her report, K.N.B. petitioned the trial court for an SVPO under the PVSVIA. K.N.B. testified that she sought the SVPO because she had "dealt with the fear for the last almost three years," and she did not want to worry about whether he would come up to her. Id. at 31-32.

In the Petition, K.N.B. sought an SVPO and also requested: that the court "[d]irect Defendant to pay Plaintiff for the reasonable financial losses suffered as the result of the abuse, to be determined at the hearing," the costs

of bringing the action, reasonable attorney fees, and "other relief as Plaintiff requests and/or the court deems appropriate." Petition, filed Feb. 15, 2018, at ¶ 10d-g.

The trial court granted a temporary protection order and scheduled a hearing to consider her motion for a final SVPO.

Prior to the final hearing, M.D. filed a Motion to Vacate Temporary PFA Order and Dismiss PFA Petition with Prejudice, claiming, in part, that K.N.B.'s petition for an SVPO was barred by the statute of limitations because she filed it more than two years after the alleged assault. The court heard argument, and found that the two-year statute of limitations found at 42 Pa.C.S.A. § 5524 did not apply, and that the six-year catch-all statute of limitations at Section 5527 applied. N.T., 5/10/18, at 7. The court therefore found K.N.B.'s petition not barred by the statute of limitations.

The court held a hearing on the petition for an SVPO. It then entered a final SVPO prohibiting M.D. from contacting K.N.B. for a period of one year. M.D. filed a timely Notice of Appeal.

M.D. raises the following issues:

> 1. Whether an action under the [PVSVIA], which is filed more than twenty-nine months after the date of the most recent incident of sexual violence alleged in the petition, is barred by the two year statute of limitations?
>
> 2. Whether the final PVSVIA order entered against [M.D.] is supported by sufficient evidence?
>
> 3. Whether the final PVSVIA order entered against [M.D.] is against the weight of the evidence?

M.D.'s Br. at 14 (suggested answers and trial court dispositions omitted).

I. The PVSVIA – Background and Procedures

The Pennsylvania General Assembly enacted the PVSVIA to protect victims of sexual violence from further abuse or intimidation by their offenders, "regardless of whether they seek criminal prosecution." See 42 Pa.C.S.A. § 62A02(5) (findings include "[v]ictims of sexual violence and intimidation desire safety and protection from further interactions with their offender, regardless of whether they seek criminal prosecution"). To this end, the PVSVIA provides victims with an immediate remedy to prevent future interactions with the offender. See 42 Pa.C.S.A. § 62A07; E.A.M. v. A.M.D., III, 173 A.3d 313, 321 (Pa.Super. 2017) (finding "protecting victims of sexual abuse from future interaction with their assailants is the precise purpose of the [PVSVIA]").

The Act, in relevant part, applies to victims of sexual violence whose attackers are not members of their family or household. See 42 Pa.C.S.A. § 62A03. The Act defines a victim as "[a] person who is the victim of sexual violence. . . ." Id. Sexual violence, as defined under the Act, is "[c]onduct constituting a crime under any of the [enumerated sexual assault criminal] provisions between persons who are not family or household members." See id.

Under the PVSVIA, a victim of a sexual offense may petition for an SVPO. 42 Pa.C.S.A. § 62A05(a). An SVPO "may include [p]rohibiting the defendant from having any contact with the victim, including, but not limited to,

restraining the defendant from entering the victim's residence, place of employment, business or school." 42 Pa.C.S.A. § 62A07(b)(1). The Act allows a victim to seek temporary and final protection orders.

If a victim of sexual violence petitions for a temporary order and alleges an immediate and present danger, the court must conduct an ex parte hearing. See 42 Pa.C.S.A. § 62A06(b). The court may then issue a temporary order if it determines the petitioner is in immediate and present danger from the offender. See id. A temporary order is in effect until it is either modified or terminated by the court. See id.

If a victim petitions for a final order, the court must commence a proceeding within ten days of the filing of a petition. See 42 Pa.C.S.A. § 62A06(a). By its plain language, the Act requires the petitioner to first assert that he or she is a victim of sexual violence committed by the defendant. See 42 Pa.C.S.A. § 62A06(a)(1). The petitioner must then prove by a preponderance of the evidence that he or she is at a continued risk of harm from the defendant. 42 Pa.C.S.A. § 62A06(a)(2). If the trial court grants an SVPO, it must not exceed 36 months. 42 Pa.C.S.A. § 62A07(c).

II. Statute of Limitations

M.D. contends the trial court erred in finding that the six-year catch-all statute of limitations, rather than the two-year statute of limitations found in Section 5524, applied to petitions filed under the PVSVIA. M.D. asserts that an action under the PVSVIA is subject to a two-year statute of limitations pursuant to subsections 5524(1), (2), (5), and (7). See M.D.'s Br. at 33. M.D.

concludes K.N.B's petition was untimely because the petition was subject to the two-year time limitation and it was filed more than two years after the alleged assault.

Determining which statute of limitations applies to a cause of action is a question of law, and we review a trial court determination as to the applicable statute of limitations de novo. See Wilson v. Transp. Ins. Co., 889 A.2d 563, 570 (Pa.Super. 2005); Erie Ins. Exchange v. Bristol, 174 A.3d 578, 585 n.13 (Pa. 2017).

The General Assembly did not provide an explicit time limitation for filing an action under the PVSVIA. When the legislature fails to prescribe a limitations period for a cause of action, the judiciary must determine the legislature's intention. See Snyder Bros. v. Pa. PUC, 198 A.3d 1056, 1071 (Pa. 2018). Courts have not yet determined the statute of limitations applicable to petitions filed under the PVSVIA and therefore the issue is one of first impression.

The Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501-1991, governs our interpretation of the PVSVIA. Further, the Pennsylvania Supreme Court has provided that:

> The objective of all interpretation and construction of statutes is to ascertain and effectuate the legislative intent behind the statute. When the plain language of a statute is clear and free from all ambiguity, it is the best indication of legislative intent.
>
> When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent, including the purpose of the statute and the consequences

- 7 -

of a particular interpretation. Furthermore, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute. Lastly, we presume that the legislature did not intend an unreasonable or absurd result.

Watts v. Manheim Twp. School Dist., 121 A.3d 964, 972 (Pa. 2015) (quotation marks and citations omitted).

The statute of limitations requires aggrieved individuals to bring their claims within a certain period; otherwise, the aggrieved party loses the right to recover for sustained injuries. See 42 Pa.C.S.A. § 5501(a). Under the Judicial Code, each cause of action is subject to its own statute of limitations. The PVSVIA provides for civil, not criminal, relief and is therefore governed by the statutes imposing limitations periods on civil actions. See 42 Pa.C.S.A. § 62A02(6) (stating PVSVIA provides a civil remedy); E.A.M., 173 A.3d at 318 (noting the PVSVIA provides for civil relief).

The statute prescribes a two-year limitation period for an action arising in tort:

> The following actions and proceedings must be commenced within two years:
>
> (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
>
> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
>
> . . .
>
> (5) An action upon a statute for a civil penalty or forfeiture.
>
> . . .

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter. . . .

42 Pa.C.S.A. § 5524. A six-year catch-all statute of limitations applies to a civil action or proceeding that is not "subject to another limitations specified in the subchapter" or "excluded from application of a period of limitation." See Pa.C.S.A. § 5527(b).

We conclude that the subsections of the two-year statute of limitations highlighted by M.D. do not apply to petitions filed under the PVSVIA.

M.D. argues subsection 5524(1) applies here because K.N.B. alleges she was the victim of a sexual battery. See M.D.'s Br. at 34. Section 5524(1) applies a two-year statute of limitations to actions "for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process." However, the PVSVIA does not provide victims of sexual violence with a cause of action for tortious conduct. It requires merely the assertion of tortious conduct. See 42 Pa.C.S.A. § 62A06(a)(1) (stating plaintiff must "assert" he or she is a "victim of sexual violence or intimidation"). Further, unlike the actions mentioned in Section 5524(1), in which a plaintiff seeks compensation for past harm, the intent of the PVSVIA is to protect the petitioner from future harm. See 42 Pa.C.S.A. § 62A02(5)-(6); E.A.M. 173 A.3d at 321; see also Burke ex rel. Burke v. Bauman, 814 A.2d 206, 208 (Pa.Super. 2002) (finding that goal of PFA "is not punishment of abusers for

past violent behavior, but 'advance prevention of physical and sexual abuse'"). Therefore, Section 5524(1) does not apply to the PVSVIA.

M.D. next argues that Section 5524(2) applies because K.N.B. sought damages when she asked the court to "[d]irect [d]efendant to pay [p]laintiff for the reasonable financial losses suffered as a result of the abuse." M.D.'s Br. at 35 (quoting Petition, at ¶ 10). M.D. further maintains that Section 5524(7), which concerns trespassory conduct, applies to PVSVIA claims because battery is an action sounding in trespass. See id.

Sections 5524(2) and 5524(7), which both apply to actions seeking damages, do not apply here. The PVSVIA does not provide for any recovery of damages to person or property. Rather, the PVSVIA provides "the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief." 42 Pa.C.S.A. § 62A02(6); accord 42 Pa.C.S.A. § 62A07 (providing "[t]he court may issue an order or approve a consent agreement to protect the plaintiff or another individual, as appropriate, from the defendant"). Although K.N.B. put a request for damages in the petition, the court lacked the power to award damages and her request does not convert the petition for an SVPO into a civil complaint seeking damages.

Lastly, M.D. urges us to find that the PVSVIA is subject to subsection 5524(5)—an action for a civil penalty—as the Act assesses a surcharge against offenders. See M.D.'s Br. at 36-37. The PVSVIA is not an action for a civil

penalty or forfeiture. Under the PVSVIA, the court must assess a surcharge against a defendant of $100 if it grants an SVPO:

> (c.1) Surcharge on order.--When an order is granted under section 62A06 (relating to hearings), a surcharge of $100 shall be assessed against the defendant. All moneys received from surcharges shall be distributed in the following order of priority:
>
> (1) Twenty-five dollars shall be forwarded to the Commonwealth and shall be used by the Pennsylvania State Police to establish and maintain the Statewide registry of protection orders provided for in section 62A04(c) (relating to responsibilities of law enforcement agencies).
>
> (2) Fifty dollars shall be retained by the county and shall be used to carry out the provisions of this chapter as follows:
>
> (i) Twenty-five dollars shall be used by the sheriff.
>
> (ii) Twenty-five dollars shall be used by the court.
>
> (3) Twenty-five dollars shall be forwarded to the Department of Public Welfare for use for victims of sexual assault in accordance with the provisions of section 2333 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.
>
> (4) The surcharge allocated under paragraphs (1) and (3) shall be used to supplement and not to supplant any other source of funds received for the purpose of carrying out the provisions of this chapter.

42 Pa.C.S.A. § 62A05(c.1) (footnotes omitted). The surcharge assessed against respondents such as M.D. is not a penalty. A penalty is a punishment intended to deter undesired conduct. See, e.g., Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002). The $100 assessment at issue here is explicitly labelled a "surcharge." 42 Pa.C.S.A. § 62A05(c.1). Black's Law Dictionary (8th Ed. 2004) defines "surcharge" as "[a]n

additional tax, charge, or cost." Section 62A05(c.1) provides that the surcharge will be paid to various governmental units, primarily for the purpose of carrying out the provisions of the PVSVIA. These purposes do not support a finding that the surcharge was intended as a punishment, or that it was intended to deter undesired conduct. As such, we conclude PVSVIA is not a civil penalty or forfeiture.

M.D. does not argue that any other limitations period applies here, and our independent review reveals that no other section is applicable. We therefore conclude the catch-all provision providing for a six-year statute of limitations applies to the PVSVIA.

III. Sufficiency of the Evidence

M.D. next contends that K.N.B. did not present sufficient evidence that she was the victim of a sexual assault or of continued harm.

Our standard of review for a challenge to the propriety of an SVPO is whether the trial court committed an abuse of discretion or an error of law. E.A.M., 173 A.3d at 316. An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." Id. (citation omitted).

To establish a right to relief under the PVSVIA, the plaintiff must:

> (1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S.A. § 62A06(a). For the first prong, the plaintiff must "assert that [he or she] was a victim of sexual violence . . . committed by the defendant" and the court must find the assertion credible. E.A.M., 173 A.3d at 319. For the second prong, the plaintiff must prove by a preponderance of the evidence, "a more likely than not inquiry," that she is at a continued risk of harm from the defendant. Id. at 319-20. The risk of harm includes the risk of mental and emotional harm, such as "apprehension, fear, and emotional distress." Id. at 321.

### A. Victim of Sexual Violence

M.D. first asserts that K.N.B. failed to produce sufficient evidence that she was a victim of sexual violence. M.D. claims that K.N.B.'s claim of sexual assault "does not bear reasonable scrutiny," because she could have left when the roommate entered, she did not have to participate in oral sex, and she returned the next day. M.D.'s Br. at 42-43. He claims K.N.B.'s testimony was not credible.

Here, K.N.B. asserted she was a victim of sexual violence, and she presented evidence regarding the non-consensual encounter with M.D. See N.T., 6/15/18, at 14-16. The Act only requires an assertion of sexual violence, and K.N.B.'s testimony established she was a victim. See A.M.D. on Behalf of A.D. v. T.A.B., 178 A.3d 889, 894 (Pa.Super. 2018). The trial court resolved any questions about K.N.B.'s testimony by finding she "gave credible

explanations for her behavior." Trial Court Op., filed Aug. 29, 2018, at 7 ("1925(a) Op."). The court found her credible, reasoning:

> I believed her when she said she told [M.D.] three times she did not want to do more than kiss and he ignored her. While I questioned why she would feel paralyzed like she could not move, I had no reason to doubt her. I could understand, given her young age, how she would feel confused and scared. I accepted the fact that under these circumstances she would not refuse sex. Her explanation that she completely lost it and was sobbing and got her clothes and left indicated that her participation in the sex acts was not voluntary.

Id. at 7-8. The trial court further addressed the testimony that K.N.B. returned the next day, noting:

> Her explanation was, she felt like she did something wrong by not wanting to have sex with him like every other college girl who hooks up with someone. She felt like she was his prisoner and like she owed it to him to have sex with him again. She was still terrified. She said it was hard to explain. When they started to have sex for not even two minutes she lost it and got her clothes and left. I concluded that because of her emotional state she did not voluntarily submit to sexual intercourse that next day.

Id. at 8. The court also found M.D.'s Facebook message, and his explanation that the message was to apologize for saying "he was not feeling it" during the second encounter, as less credible than K.N.B.'s testimony. Id.

As the record supports the trial court's credibility findings, we will not disturb the trial court's finding that K.N.B. was a victim of sexual violence.

### B. Continued Risk of Harm

M.D. also contends that K.N.B. did not establish that she was at a continued risk of harm. He argues "a fear of harm must be a reasonable fear,

- 14 -

subject to an objective determination by [the] trial court." M.D.'s Br. at 52-53. M.D. argues that he never sought out K.N.B. or contacted her after the May 2016 Facebook message. He stated he did not do anything "untoward" to K.N.B. when he saw her at social events. He argues that the court erred because it viewed a defendant's intent as immaterial to whether a plaintiff was at a continued risk of harm. Id. at 52. He claims that "[i]f [K.N.B.] was indeed fearful, her fear was irrational and unreasonable, which should not be the standard for entry of a PVSVIA order." Id.

At the evidentiary hearing, K.N.B. testified that she was at a continued risk of harm from M.D. because his recurring presence caused her severe emotional damage. See N.T., PVSVIA Hearing, 6/15/18, at 24-27. For instance, when M.D. approached K.N.B. at a sorority party in November 2016, K.N.B. explained that she "[went] into this episode of traumatic stress, and . . . the whole world [stopped], and I [couldn't] think . . . of anything else but . . . him being there." Id. at 24. K.N.B. also testified that she suffered similar episodes upon seeing M.D. outside her home and at a Walmart shopping center in 2018. See id. at 28. Her reason for seeking the protection order was to no longer "worry about [M.D.] coming up to [her] . . . in public." Id. at 32.

After K.N.B. testified at the hearing, the record reveals the trial court encountered difficulty in dealing with the Act's second prong. See id., at 105-106. Little guidance exists for trial courts regarding the applicable standard for finding a continued risk of harm. Nevertheless, we faced a situation similar to the one at hand in E.A.M., 173 A.3d at 320.

There, the appellant appealed from a final SVPO, arguing his repeated presence at events at his former school, where the victim also was present, did not demonstrate a risk of harm. See id. We explained that such recurring presence, when it "causes [the victim] . . . apprehension, fear, and emotional distress," is sufficient evidence to demonstrate a continued risk of harm. See id., at 321.

Here, the trial court found that K.N.B.'s testimony was credible and established that M.D.'s repeated presence was the cause of her apprehension, fear, and emotional distress. See N.T., PVSVIA Hearing, 6/15/18, at 107. These findings are supported by the record, and the trial court's analysis is reasonable in light of the evidence presented at the hearing. We therefore cannot conclude the trial court abused its discretion in finding K.N.B. is at a continued risk of harm from M.D.

IV. Against the Weight of the Evidence

In his final issue on appeal, M.D. asserts the entry of the SVPO was against the weight of the evidence. We review a challenge to the weight of the evidence to determine whether the trial court abused its discretion in finding the verdict was not against the weight of the evidence. Haan v. Wells, 103 A.3d 60, 70 (Pa.Super. 2014) (quoting In re Estate of Smaling, 80 A.3d 485, 490 (Pa.Super. 2013)). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge." Id. (quoting In re Estate of Smaling, 80 A.3d at 490).

Here, the trial court found that its decision does not shock the conscience, for the same reasons that the decision is supported by the evidence. This was not an abuse of discretion.

Order affirmed.

President Judge Panella joins the Opinion.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/2020