**[J-13-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| K.N.B., | : | No. 20 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered January 30, |
| | : | 2020 at No. 1003 WDA 2018 |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Clarion County |
| | : | entered June 15, 2018 at No. 155 |
| M.D., | : | CD 2018. |
| | : | |
| Appellant | : | SUBMITTED: January 25, 2021 |


**OPINION**


**JUSTICE WECHT**                    **DECIDED: SEPTEMBER 22, 2021**

The main question in this appeal is whether a petition seeking a protective order under the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA")[1] is subject to the two-year statute of limitations governing certain enumerated civil actions or the six-year catch-all statute of limitations that applies to non-enumerated actions. Because we conclude that the six-year limitations period applies, we affirm.

The Appellee in this case, K.N.B., was a freshman at Clarion University in 2015. K.N.B. claims that a fellow Clarion student, M.D., sexually assaulted her in September 2015. K.N.B. initially did not report the assault to the police. Only after seeing M.D. at a Walmart in early 2018 did K.N.B. report the assault to the Clarion University Police Department. By this time, K.N.B. was no longer a student at the University.

---

[1]     *See* 42 Pa.C.S. §§ 62A01-62A20.

Along with reporting the incident to the police, K.N.B. also petitioned the Clarion County Court of Common Pleas for a Sexual Violence Protective Order ("SVPO") under the PVSVIA. The General Assembly enacted the PVSVIA in 2014 to give victims of sexual violence "safety and protection from further interactions with their offender, regardless of whether they seek criminal prosecution." 42 Pa.C.S. § 62A02(5). The law allows victims of sexual violence who would not be able to obtain a Protection From Abuse Order[2] to seek a SVPO prohibiting their abusers from contacting them, under penalty of arrest. *Id.* §§ 62A07(b)(1), 62A12. To establish a right to relief under the PVSVIA, a plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

*Id.* § 62A06(a).

After K.N.B. filed her petition, the court entered a temporary SVPO and scheduled a hearing to consider whether a final order should issue.[3] Prior to that hearing, M.D. petitioned the trial court to vacate the temporary SVPO and dismiss K.N.B.'s petition with prejudice, claiming that the petition was barred by the statute of limitations. The trial court rejected M.D.'s argument. Noting that the PVSVIA itself does not include a statute of limitations, the trial court held that claims under the Act are subject to the six-year catch-all statute of limitations under the Judicial Code. 42 Pa.C.S. § 5527(b) (imposing a six-

---

[2]    *See* 23 Pa.C.S. §§ 6101-6122. Under the Protection From Abuse Act, the definition of "abuse" is limited to specified acts occurring "between family or household members, sexual or intimate partners[,] or persons who share biological parenthood[.]" *Id.* § 6102.

[3]    The PVSVIA authorizes trial courts to conduct *ex parte* proceedings and enter temporary SVPOs when necessary to protect the plaintiff, or another individual, from "an immediate and present danger." 42 Pa.C.S. § 62A06(b). A full hearing must then be held within ten days of the filing of the petition. *Id.* § 62A06(a).

year statute of limitations for "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation)"). Consequently, the court concluded that K.N.B.'s petition was filed within the applicable statute of limitations.

At the final hearing on her petition, K.N.B. testified regarding the details of the 2015 assault. K.N.B. also testified that, on the day after the assault, she and M.D. agreed to see each other again. According to K.N.B., she "felt like [she] did something wrong by not wanting to have sex with [M.D.] again" and "[she] felt like [she] owed him to have sex with him again." Notes of Testimony ("N.T."), 6/15/2018, at 17. During this second encounter, she started to have sex with M.D., but then she "just lost it, and . . . was like I'm done." *Id.* at 18.

K.N.B. also testified that, in May 2016, M.D. sent her a Facebook message stating, "Okay, so I just want to say I'm sorry for being a douche. I know it was a dick thing, and I am sorry." *Id.* at 22. In addition to this virtual interaction, K.N.B. stated that she and M.D. occasionally would attend the same parties, including one in November 2016 where M.D. approached her, "cracked a joke," and tried to fist bump her. *Id.* at 25. When this happened, K.N.B. "[went] into [an] episode of traumatic stress, and . . . the whole world [stopped], and [she could not] think . . . of anything else but . . . him being there." *Id.* at 24.

K.N.B. also testified that she would see M.D. on campus sometimes, and she once saw him walking his dog by her house. K.N.B. explained that these encounters triggered panic attacks, and that she was diagnosed with post-traumatic stress disorder. *Id.* Indeed, K.N.B. testified that she suffered a panic attack after seeing M.D. in Walmart in 2018, which led her to seek the SVPO. K.N.B. explained that her reason for seeking a

protective order was to no longer "worry about [M.D.] coming up to [her] . . . in public." *Id.* at 32.

For his part, M.D. testified that the initial sexual encounter with K.N.B. in 2015 was consensual. With regard to the second encounter, M.D. testified that he and K.N.B. again had consensual sex, but he ejaculated quickly and, rather than admitting this to K.N.B., told her that he "was just not feeling it." *Id.* at 75. According to M.D., his May 2016 Facebook message to K.N.B. was meant to be an apology for saying that he was "not feeling it." *Id.* at 75-76.

After the hearing, the court entered a final SVPO prohibiting M.D. from contacting K.N.B. for one year. In its Rule 1925 opinion, the court found K.N.B.'s testimony to be credible in all respects and determined that M.D. was less credible than K.N.B. As for the "continued risk of harm" element, the court concluded that K.N.B. proved by a preponderance of the evidence that she risked ongoing harm from M.D. The court underscored that, even though M.D. did not make sexual advances toward K.N.B. after September 2015, K.N.B. experienced mental and emotional harm (including panic attacks) and feared that M.D. would approach her in public again. Given this risk of additional emotional trauma, the court found that K.N.B. met her burden under the PVSVIA of demonstrating a continued risk of harm.

On appeal to the Superior Court, M.D. again argued that actions brought under the PVSVIA are subject to a two-year statute of limitations. Specifically, he emphasized that the Judicial Code provides that the following civil actions and proceedings must be commenced within two years:

> (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
>
> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

* * *

(5) An action upon a statute for a civil penalty or forfeiture.

* * *

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S. § 5524.

M.D. first argued that K.N.B.'s petition constitutes an action for battery under Subsection 5524(1), since the petition alleges that K.N.B. is victim of sexual battery. The Superior Court disagreed, explaining that the PVSVIA "does not provide victims of sexual violence with a cause of action for tortious conduct." *K.N.B. v. M.D.*, 227 A.3d 918, 924 (Pa. Super. 2020). Instead, "[i]t requires merely the assertion of tortious conduct." *Id.* at 925. In other words, the court interpreted the phrase "[a]n action for . . . battery," as used in Subsection 5524(1), to mean a *tort action* for battery, which K.N.B.'s statutory action under the PVSVIA plainly is not.

M.D. next argued that Subsection 5524(2) applies here given that K.N.B. sought damages in her petition when she asked the court to "[d]irect [d]efendant to pay [p]laintiff for the reasonable financial losses suffered as a result of the abuse." SVPO Petition at ¶ 10. For the same reason, M.D. also asserted that K.N.B.'s petition is an action to recover damages for tortious conduct under Subsection 5524(7). The Superior Court rejected both of these arguments as well, explaining that the PVSVIA "does not provide for any recovery of damages to person or property. Rather, the PVSVIA provides 'the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief.'" *K.N.B.*, 227 A.3d at 925 (quoting 42 Pa.C.S. § 62A02(6)). Thus, the trial court lacked the authority to award K.N.B. damages under the Act, and K.N.B.'s futile request for damages did "not convert the petition for a SVPO into a civil complaint seeking damages." *Id.*

Finally, M.D. argued that SVPO petitions constitute "[a]n action upon a statute for a civil penalty" under Subsection 5524(5), since the PVSVIA provides that a trial court must assess a $100 surcharge against a defendant whenever it enters a SVPO. *See* 42 Pa.C.S. § 62A05(c.1). The panel was not persuaded by this argument either. It held that the $100 assessment is not a civil penalty, given that it is explicitly labeled as a surcharge and the funds are ultimately "paid to various governmental units, primarily for the purpose of carrying out the provisions of the [Act]." *K.N.B.*, 227 A.3d at 926; *see* 42 Pa.C.S. § 62A05(c.1) (providing that $25 "shall be used by the Pennsylvania State Police to establish and maintain the Statewide registry of protection orders," $25 "shall be forwarded to the Department of Public Welfare for use for victims of sexual assault," and the remaining $50 shall be split between the sheriff and the court "to carry out the provisions of this chapter").

Having determined that K.N.B.'s petition did not fall within any of Subsection 5524's enumerated categories, the Superior Court concluded that the Judicial Code's catch-all provision applies. That provision states that the statute of limitations is six years for civil actions or proceedings that are not subject to another limitation elsewhere in the Code.[4] The court therefore concluded that K.N.B.'s petition, which she filed twenty-nine months after the alleged assault, was timely.

M.D. also raised the issue of whether the trial court erred in concluding that K.N.B. proved by a preponderance of the evidence that she was at a "continued risk of harm" as the PVSVIA requires. According to M.D. the trial court erred because it viewed M.D.'s own intent as immaterial to whether K.N.B was truly at a risk of harm. M.D. argued that the PVSVIA requires that any such fear of harm must be objectively reasonable under the circumstances. And, in M.D.'s view, K.N.B.'s fear was unreasonable given that he never

---

[4]     *See* 42 Pa.C.S. §5527(b).

sought out K.N.B. after the May 2016 Facebook message and did not do anything "untoward" to her when he saw her at social events. Put differently, M.D. maintained that, "[i]f [K.N.B.] was indeed fearful, her fear was irrational and unreasonable, which should not be the standard for entry of a PVSVIA order." *K.N.B.*, 227 A.3d at 927.

The Superior Court held that K.N.B. presented sufficient evidence for the trial court to conclude that she was at a continued risk of harm. In so holding, the court relied upon *E.A.M. v. A.M.D. III*, 173 A.3d 313, 319 (Pa. Super. 2017), a case in which the appellant had argued that his repeated presence at events at his former school, where his victim was also present, did not demonstrate a continued risk of harm. The *E.A.M.* court rejected this reasoning, explaining that such a recurring presence, when it causes the victim "apprehension, fear, and emotional distress," is sufficient evidence to demonstrate a continued risk of harm. *Id.* at 321. Analogizing *E.A.M.* to the present case, the panel below concluded that the trial court did not err in entering a final SVPO given that M.D.'s repeated presence had caused and likely would continue to cause K.N.B. significant emotional trauma.

M.D. then filed a petition for allowance of appeal, which we granted to consider both whether the six-year statute of limitations applies under the PVSVIA and whether the continued risk of harm element can be demonstrated based solely on the victim's subjective fear of harm. Both of these issues are pure questions of law, which we review *de novo. Commonwealth v. Hacker*, 15 A.3d 333, 335 (Pa. 2011).

Our interpretation of the PVSVIA, and the Judicial Code as a whole, is governed by the Statutory Construction Act.[5] Of paramount importance here is the principle that the best indication of the General Assembly's intent is the statute's plain language. *Watts v. Manheim Twp. Sch. Dist.*, 121 A.3d 964, 972 (Pa. 2015). Accordingly, "[w]hen the

---

[5] *See* 1 Pa.C.S. §§ 1501-1991.

words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Beginning with the statute of limitations question, we note that the General Assembly did not explicitly include a statute of limitations in the PVSVIA. We therefore must determine under which category in the Judicial Code the legislature intended such petitions to fall. M.D. first argues that "a PVSVIA proceeding is, at its essence, one arising from an alleged tort," Brief for M.D. at 31, and thus should be subject to the two-year statute of limitations in Subsection 5524(1) of the Judicial Code, which governs actions "for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process." 42 Pa.C.S. § 5524(1).

Like the Superior Court, we conclude that a petition seeking a protective order under the PVSVIA is not "[a]n action for assault [or] battery" within the meaning of Section 5524. *Id.* As the intermediate court explained, "the PVSVIA does not provide victims of sexual violence with a cause of action for tortious conduct;" it merely requires that a petitioner assert that he or she has been a victim of an enumerated sex crime.[6] So, while tortious conduct might be a factual predicate to filing a PVSVIA petition, that alone does not transform a petition brought under the PVSVIA into an intentional tort action for which the two-year statute of limitations applies pursuant to Subsection 5524(1).

Nor are we persuaded that an action brought under the PVSVIA is "[a]n action to recover damages" for purposes of Subsection 5524(2). *See* 42 Pa.C.S. § 5524 (providing that the statute of limitations is two years for "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another"). While M.D. is correct that K.N.B.'s petition

---

[6] *K.N.B.*, 227 A.3d at 924-25; 42 Pa.C.S. § 62A06(a)(1) (stating that a petitioner must "assert" that he or she is a "victim of sexual violence or intimidation"); *see id.* § 62A03 (defining "sexual violence").

requested that the trial court award compensation "for the reasonable financial losses suffered as a result of [M.D.'s] abuse,"[7] the PVSVIA does not explicitly allow for the recovery of personal or property damages.  Instead, the PVSVIA provides "the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief."  42 Pa.C.S. § 62A02(6); *see id.* § 62A07 (explaining that courts "may issue an order or approve a consent agreement to protect the plaintiff or another individual, as appropriate, from the defendant").  K.N.B.'s request for damages in her PVSVIA petition did not transform the proceedings into an action to recover damages, in the same way that a request for M.D.'s immediate arrest would not have transformed this matter into a criminal case.

As Justice Saylor points out in his Concurring Opinion, the PVSVIA authorizes courts to order "any other appropriate relief," yet does not specify what sort of relief might be "appropriate."  *See* 42 Pa.C.S. § 62A07(b)(2); Concurring Opinion at 2.  While we acknowledge that this vague language arguably could be construed to encompass tort damages, we do not believe that the General Assembly—simply by empowering courts to grant "appropriate relief"—intended to ordain that PVSVIA cases are "action[s] to recover damages" under the Judicial Code.  Indeed, the "any other appropriate relief" proviso in the PVSVIA was taken word-for-word from the Protection From Abuse Act.[8] And similar language appears in other Pennsylvania statutes, some of which explicitly permit plaintiffs to obtain monetary damages notwithstanding the "other appropriate relief"

---

[7]     SVPO Petition at ¶ 10.

[8]     23 Pa.C.S. § 6108(a)(10) (authorizing courts to grant "any other appropriate relief sought by the plaintiff" in Protection From Abuse Act cases).

catch all.[9]  In short, the mere availability of "other appropriate relief" in PVSVIA cases does not change the essence of the underlying proceeding, which is an action seeking a protective order under the PVSVIA.[10]    Finally, M.D. argues briefly that PVSVIA petitions fall within Subsection 5524(5), which provides that a two-year statute of limitations applies to "[a]n action upon a statute for a civil penalty or forfeiture."  42 Pa.C.S. § 5524(1).  M.D. claims that PVSVIA proceedings constitute an action for a civil penalty given that the statute requires trial courts to impose a $100 surcharge against the defendant whenever a final SVPO is entered.  *See* 42 Pa.C.S. § 62A05(c.1) ("When an order is granted under section 62A06 (relating to hearings), a surcharge of $100 shall be assessed against the defendant.").

We agree with the lower courts that the statutory imposition of a $100 surcharge does not mean that actions brought under the PVSVIA are "for a civil penalty."  The ordinary meaning of a civil penalty is "[a] fine assessed for a violation of a statute or regulation," usually levied to punish and/or deter future violations.[11]  Here, however, the

---

[9]    *See, e.g.*, 18 Pa.C.S. § 3051(c)(5) (allowing courts to award "[a]ny other appropriate relief" to victims of human trafficking); 18 P.S. § 11.1304(a) (providing that crime victims may seek "other appropriate relief" in civil actions against their offenders).

[10]    Because the PVSVIA does not explicitly allow plaintiffs to recover damages, we also reject M.D.'s contention that PVSVIA proceedings constitute an action to recover damages for tortious conduct under Subsection 5524(7).  *See* 42 Pa.C.S. § 5524(7) (providing that a two-year statute of limitations applies to "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud[.]").

[11]    BLACK'S LAW DICTIONARY (11th ed. 2019) (giving the example: "the EPA levied a civil penalty of $10,000 on the manufacturer for exceeding its pollution limits"); *see Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) ("A penalty . . . is fixed, 'not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach.'"); *Cohen v. Zarwin & Baum, P.C.*, 1993 WL 532963, at *2 (E.D. Pa. 1993) ("[A]n 'action upon a statute for a

PVSVIA's $100 assessment is not labeled as a fine or penalty. It is explicitly categorized as a "surcharge," and all funds collected are earmarked for entities tasked with carrying out the provisions of the PVSVIA.[12] While the difference may seem semantic to some, legislative intent is paramount, and the General Assembly clearly intended to impose a "surcharge" to offset the enforcement costs associated with protective orders; it did not purport to levy civil fines for past incidences of sexual assault. *See Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1283 (Pa. 2002) (declining to hold that "a remedy which the General Assembly has specifically designated as liquidated damages is in fact a [civil] penalty or forfeiture").

More importantly, the $100 surcharge is at best an ancillary aspect of the overall action in this case. The primary purpose of PVSVIA actions—indeed, the entire purpose of the PVSVIA itself—is to "provid[e] the victim with a civil remedy requiring the offender to stay away from the victim[.]" 42 Pa.C.S. § 62A02(6). The $100 surcharge alone does not alter the essential character of the overall action, which is a statutory proceeding brought by a victim of sexual abuse to obtain a protective order. Accordingly, we reject M.D.'s argument that PVSVIA petitions are subject to a two-year statute of limitations under Subsection 5524(5).

Because PVSVIA actions do not fit within any of the listed actions in Section 5524, the lower courts correctly concluded that the catch-all statute of limitations applies. *See* 42 Pa.C.S. §5527(b) (imposing a six-year statute of limitations for "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no

civil penalty or forfeiture' encompasses statutory civil actions that are penal, deterrent, punitive, and non-compensatory in nature.").

[12]     *See* 42 Pa.C.S. § 62A05(c.1) (dividing the $100 surcharge between the State Police, the Department of Public Welfare, the Sheriff, and the court).

limitation)"). Accordingly, K.N.B.'s PVSVIA petition was not barred by the statute of limitations.

Turning to his second issue, M.D. contends that the trial court erred in finding that K.N.B. met the second prong of the PVSVIA, under which plaintiffs must "prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant." 42 Pa.C.S. § 62A06(a). While M.D. does not dispute that the fear and trauma associated with a plaintiff publicly encountering her assailant might constitute a continued risk of harm, he argues that trial courts must consider not only the plaintiff's fear, but also whether the defendant actually intends to harm the plaintiff. *See* Brief for M.D. at 50 ("A fear of harm must be reasonable, subject to an objective determination by the court that the defendant did something untoward in being nearby the plaintiff or, at the very least, that the defendant was knowledgeable of plaintiff's whereabouts and knew the fear that [the] defendant's presence was causing."). Thus, M.D. contends that "K.N.B.'s petition should have been decided based upon an objective determination as to whether M.D.'s presence in the vicinity of K.N.B. was for the purposes intimidating M.D. [*sic*] or, at the very minimum, knowing that K.N.B. was nearby, with M.D. knowing his presence was causing K.N.B. fear." *Id.* at 47.

Contrary to M.D.'s suggestion, nothing in the text of the PVSVIA indicates that the statute's second prong rises or falls depending upon whether the defendant intends to harm the plaintiff. The law requires only what it says: the plaintiff must prove that he or she (or another individual) is "at a continued risk of harm from the defendant." 42 Pa.C.S. § 62A06(a). The defendant's own intent may inform this inquiry in some cases. When a plaintiff argues that she risks additional physical abuse by the defendant, for example, the defendant's own subjective intent likely will influence the trial court's risk-of-harm analysis.

Here, however, the trial court found that K.N.B. risks ongoing harm from M.D. given that his very presence triggers K.N.B.'s panic attacks. The court also noted that K.N.B. suffers from PTSD from the assault and is in therapy as a result. Logically, then, whether or not M.D. subjectively intends to harm K.N.B. is irrelevant under the statute because she risks ongoing harm regardless of his intent. *See E.A.M.*, 173 A.3d at 321 (holding that the defendant's recurring presence, when it causes the victim "apprehension, fear, and emotional distress," is sufficient evidence to demonstrate a continued risk of harm under the PVSVIA).

M.D. also emphasizes that the Protection From Abuse Act defines "abuse" to include, among other things, "[p]lacing another in *reasonable* fear of imminent serious bodily injury." 23 Pa.C.S. § 6102(a) (emphasis added). But that fact actually weakens M.D.'s argument, since it demonstrates that the General Assembly, in a statute that predates the PVSVIA, knew exactly how to convey that a plaintiff's fear of harm must be objectively reasonable to support the issuance of a protective order. Unlike the Protection From Abuse Act, however, the PVSVIA contains no such limitation. It requires only an assertion of sexual violence or intimidation combined with proof that the plaintiff (or some other person) "is at a continued risk of harm from the defendant." 42 Pa.C.S. § 62A06(a).

Unlike the Concurring and Dissenting Opinion, we decline M.D.'s invitation to read into the PVSVIA a requirement that a plaintiff's fear of encountering the defendant must be objectively reasonable under the circumstances. *See* Brief for M.D. at 60 ("Justice requires a fear of harm on the part of a PVSVIA plaintiff be a reasonable fear, and not simply a subjective claim that plaintiff is fearful of seeing defendant."); Concurring and Dissenting Opinion at 6. While M.D. argues at length in his brief that the Commonwealth would be better served by a law that incorporates an objective, reasonable-person standard, the fact remains that this Court is not permitted to revise or improve upon

unambiguous statutory language. 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). And there is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard.[13]

Furthermore, even if the PVSVIA were somehow ambiguous regarding whether a plaintiff's subjective fear alone can constitute a continued risk of harm, we would still reject M.D.'s argument that the statute turns on whether the defendant intends to harm or intimidate the plaintiff. The PVSVIA exists specifically to protect victims of sexual abuse from future interactions with their assailants, which is why the General Assembly explicitly stated in the law's "findings and purpose" section that "[v]ictims of sexual violence and intimidation desire safety and protection *from future interactions with their offender*, regardless of whether they seek criminal prosecution." 42 Pa.C.S. § 62A02(5) (emphasis added). There is absolutely no indication, implicit or explicit, that the General Assembly

---

[13]     The Concurring and Dissenting Opinion warns that, if its "reasonableness" overlay is not judicially engrafted onto the statute, then "virtually every plaintiff" will be entitled to a final protective order under the PVSVIA. The Concurring and Dissenting Opinion is correct only if "virtually every plaintiff" means every plaintiff who both asserts that she is a victim of sexual violence as defined in the Act and convinces a fact-finder (by a preponderance of the evidence) that she risks ongoing harm from encountering the defendant. If, however, the Concurring and Dissenting Opinion is suggesting that the PVSVIA, as actually written, imposes an illusory burden on those petitioning for protective orders, that is plainly incorrect. 42 Pa.C.S. § 62A06(a)(2) (providing that plaintiffs must "prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant"). Furthermore, even if one believes that the standard for entering final PVSVIA orders is too low, this Court is not empowered to modify the General Assembly's chosen standard under the guise of statutory interpretation.

intended for the issuance of protective orders to depend upon whether the defendant intends to harm the plaintiff.[14]

In sum, we conclude that petitions filed under the PVSVIA are subject to the six-year catch-all statute of limitations. We also hold that the PVSVIA's continued risk of harm element does not require trial courts to evaluate the reasonableness of the plaintiff's mental and emotional reaction when she encounters the defendant.[15] Accordingly, we affirm the order of the Superior Court.

---

[14] The Concurring and Dissenting Opinion also contends that our decision declining to read into the PVSVIA an objective, reasonable-person standard renders the "preponderance standard of proof under the PVSVIA . . . a nullity." Concurring and Dissenting Opinion at 6 (quoting Brief for M.D. at 50). Not so. As with any statute, the PVSVIA's standard of proof merely tells us how compelling the evidence must be to satisfy *the statute's enumerated elements*. The Concurring and Dissenting Opinion, on the other hand, would use the preponderance standard to add an additional element not present in the PVSVIA: a requirement that the plaintiff's fear of harm "must be reasonable, subject to an objective determination by the court[.]" *Id.* (quoting Brief for M.D. at 50). The Concurring and Dissenting Opinion cites no legal authority for its innovative interpretation.

[15] In a somewhat confusing argument that spans only two pages, M.D. claims that interpreting the PVSVIA as written would be unconstitutional. M.D. baldly asserts that the PVSVIA's risk-of-harm standard violates his rights to substantive and procedural due process under both the Fifth and Fourteenth Amendments to the United States Constitution. He also contends that the panel's interpretation below violates "Article I of the Pennsylvania Constitution," Brief for M.D. at 61, though it is not entirely clear which of the discrete rights enumerated in Article I he is referencing. M.D. cites only *In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560 (Pa. 2018), which held that the right to protect one's own reputation cannot be impaired "absent the affordance of . . . a meaningful opportunity to be heard[.]" *Id.* at 578.

In terms of procedural due process, M.D. does not explain why the PVSVIA's statutory notice-and-hearing procedure is constitutionally insufficient. *See* 42 Pa.C.S. § 62A06 (relating to notice and hearings). And M.D.'s substantive due process argument similarly is lacking. He does not opine on the level of scrutiny that applies to his claim, nor does he cite a single substantive due process decision from any court. In light of these many briefing deficiencies, we conclude that M.D.'s constitutional arguments are waived given his failure to develop them in a fashion that would enable our review. *See Commonwealth v. Walter*, 966 A.2d 560, 566 (Pa. 2009); Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief shall include discussion and citation of pertinent authorities).

Chief Justice Baer and Justices Todd, Donohue and Dougherty join the opinion.

Justice Saylor files a concurring opinion.

Justice Mundy files a concurring and dissenting opinion.